## SUPREME COURT.

CHARLES H. GREEN agt. THE HUDSON RIVER RAILROAD COMPANY.

The common law rule declares that the mere *death of a human being* cannot be complained of as a *civil injury*, to be compensated in damages. The reason of the rule is, *actio personalis moritur cum persona*.

*Held*, that an action at common law by a husband for the loss of his wife, by the careless and negligent act of a third party, (a common carrier,) can only be sustained where some period intervened between the time of the injury, and the time of dissolution, during which he could be said to have suffered the loss of her service and society, and incurred expense, and underwent anxiety and distress upon her account.

Where death is the concomitant of the collision, and life departs at the instant the shock is received, no action for loss of service can be sustained, because there is no time during her life when it can be said that the husband has lost the service and society of his wife, in consequence of the injury complained of.

*Oneida Special Term, June,* 1858.

DEMURRER to complaint. The facts will appear in the opinion.

M. S. MILLER, *for plaintiff.*
T. M. NORTH, *for defendant.*

BACON, Justice. The plaintiff in this case was the husband of Eliza Green, who lost her life on the 9th day of

Green agt. The Hudson River R. R. Co.

January, 1856, by a collision of the cars on the defendant's railroad. The complainant avers that the deceased became a passenger on the train from Albany to New-York, under the usual engagement to be safely carried, and that by the gross carelessness and unskillfulness of the defendant's agents, a collision occurred, by means of which the said Eliza "was then and there killed." The plaintiff then avers, that as the husband of the deceased, he has lost and been deprived of the comfort, benefit and assistance of his said wife, in his domestic affairs, which he might, and otherwise would have had, to his damage of fifteen thousand dollars. To this complaint, the defendant interposes a demurrer that it does not state facts sufficient to constitute a cause of action on the part of the plaintiff, and that several causes of action are improperly united.

The case as thus stated, presents the naked question, whether at common law, a husband can maintain an action for an injury to his wife, where the effect is her instantaneous death, as is conceded to have been the fact in this case. I should hardly have deemed the point one that was susceptible of much discussion; but the question has been seriously presented by the plaintiff's counsel, and sustained by an argument of very considerable force and ingenuity. If this question were now for the first time agitated, I should concede that there is great plausibility, at least, in many of the views taken by the counsel, and go far to uphold the right to recover for an injury that strikes the mind as one of the most serious and painful to which we can be subjected, and which, in this particular case, was attended by the loss of a life for which no amount of pecuniary compensation can atone. The counsel for the plaintiff insists that this action can be maintained upon the broad principle that there can be no wrong without an appropriate remedy; that the maxim applicable to personal injuries, of the non-liability of the wrongdoer upon the supervening death of the sufferer, has no relevancy to this case, and as the act of defendant did not amount to a felony, the civil remedy is in no respect lost or impaired.

But I suppose the question has been too long settled, both in England and in this country, to be disturbed; and that it would savor somewhat more of judicial Knight-errantry than of legal prudence, to attempt to unsettle what has been deemed at rest more than two hundred and fifty years. One of the earliest cases in the books is *Higgins* agt. *Butcher*, which arose in the time of JAMES the First, about the year 1600, and is reported in *Brownlow* and also in *Yelverton*, and cited in *Hoy* with approbation. The case is reported in *Yelverton*, 89 and 90, as follows: " The plaintiff declared that the defendant assaulted, and beat one A., his wife, on such a day, of which she died such a day following, to his damage, &c." And it was moved by Foster Sergeant, that the declaration was not good, because it was brought by the plaintiff for beating his wife, and that being a personal tort to the wife, is now dead with the wife, and if the wife had been alive, he could not, without his wife, have this action; for damages shall be given for the tort offered to the body of his wife, *quod fuit concessum.*"

In a note to this case, in *Yelverton*, it is said that as the action was brought to recover damages for the injury to the wife, it is very clear that it could not be supported, and to this effect the case of *Smith* agt. *Sykes*, (1 *Freem.* 224,) is cited.

The next case in the books did not occur, so far as I can discover, until 1808, and arose before Lord ELLENBOROUGH at *nisi prius*. It is the case of *Baker* agt. *Bolton et al.*, (1 *Comp.* 493.) The action was brought against defendants as proprietors of a stage coach, on the top of which the plaintiff and his late wife were travelling from Portsmouth to London, when it was overturned, whereby the plaintiff was bruised, and his wife so severely injured, that she died about a month after. The declaration, among other things, stated that " by means of the premises, the plaintiff had wholly lost, and been deprived of the comfort, fellowship and assistance of his said wife; had suffered great grief and vexation of mind. Lord ELLENBOROUGH instructed the jury that they could only take into consideration the bruises inflicted on the plaintiff, and the loss of his wife's society, and the distress of mind he had

suffered on her account from the time of the accident till the moment of dissolution. "In a civil court," he adds, "the death of a human being could not be complained of as an injury." In a note, probably of the reporter, at the foot of this case, it is said : " *quere*, if the wife be killed on the spot, is this to be considered *damnum absque injuria ?*" And clearly it must be so on the principle announced in the decision.

The doctrine thus laid down by Lord ELLENBOROUGH, has not been questioned in England from that day to this, as a principle of the common law. It is true, the decision was made at *nisi prius*, but it has the sanction of the great name of Lord ELLENBOROUH, and having been followed ever since without dissent in England, has the authority of a case decided *in Banco Regis*.

The counsel for the plaintiff suggests, and, indeed, strongly insists, that the principle thus adjudged arose out of a peculiarity of the feudal law, which would not allow a prosecution for a civil injury, where the act amounted to a felony. The reason for this is said to be, that the crime worked not only a forfeiture of the feudatory's grant, but extended also to his personal estate, and the felon being also liable to be capitally punished, there would thus nothing be left to satisfy the private demand. This reasoning is somewhat recondite, and certainly has very little application at the present day. It is indeed, said in the case in *Yelverton*, above cited, by one of the justices, that if a man's servant is beaten so that he dies, the master shall not have an action against the wrongdoer for the battery, because the servant dying, it has now become an offence to the crown, being connected with a felony, and that drowns the particular offence and private wrong, and the action is thereby lost. And to this, it is said, the other justices agreed. If this could be deemed law two hundred and fifty years ago, it is not now to the full extent of the doctrine thus laid down, for nothing is clearer than that in England the civil remedy is not gone by reason of the criminal offence, for repeated adjudications have settled the rule, that after a trial and conviction upon an indictment for a felony, the party is

liable to a civil suit for the injury he has occasioned, as he also is where he is acquitted, unless the acquittal was procured by fraud. (*See Latch*, 144; 1 *Hale's P. C.* 546; *Crosby & Long*, 12 *East*, 409.) The offender must first be brought before the criminal tribunal for the crime, in order that the justice of the county may first be satisfied, and after this the way is opened for the injured party to seek his civil redress. It may be remarked in passing, that this doctrine has never been recognized in this country. (*Per* PARKER, C. J., 15 *Mass.* 336.) And in this state it is provided by statute, that the right of action of a party injured by a felony, shall not be in any way affected or impaired by the felony. (2 *R. S.* 292, § 2.)

No such reason as the one above stated for the rule, it may be added, is suggested by Lord ELLENBOROUGH, although the case before him was one in which it would have been pertinent to have alluded to this particular feature of the ancient jurisprudence of the country; but he lays down the broad proposition that, in a civil court, the death of a human being cannot be complained of as an injury. If it were necessary at this day to give a reason for this doctrine, I should think it more natural and obvious to refer it to the old maxim which has obtained from the earliest days of the common law, " *Actio personalis moritur cum persona.*"

In a case which arose in England under the statute of 9 and 10 *Victoria*, known as Lord DENMAN's Act, at the Derbyshire Assizes, before Baron PARKE, the learned judge, in summing up to the jury, remarked that until this act, compensation could not be recovered for the death of an individual, " the ancient common law maxim being," he said, " that the value of life was so great as to be incapable of being estimated by money." This admits the existence of the rule laid down by Lord ELLENBOROUGH, but it is the first time, so far as I am aware, that such a reason has been suggested for it—a reason, it strikes me, much more fanciful than sound, since there are many wrongs, for the redress of which an action is given, but which the instinctive sense of mankind declares are incapable

of being measured by any pecuniary standard which can do more than approach to a compensation.

But without seeking further for the reason on which the rule is founded, it is sufficient for the present purpose, that the rule has long existed in England; and were other proof wanting, the fact is evidenced in the strongest manner by the existence of the statute of 9 *and* 10 *Victoria*, before alluded to, and by the recital in the first section: "Whereas, no action at law is now maintainable against a person who, by his wrongful act, neglect or default, may have caused the death of another person, and it is oftentimes right and expedient that the wrongdoer, in such cases, shall be answerable in damages," &c. So good a lawyer as he who drafted this act, would not have put such a proposition in the shape of a legal enactment, nor the Parliament of England engaged in a work of manifest supererogation, unless it had been true that, by the law of the land, as thus far expounded by its authorities, "ancient, constant and modern," in the words of Coke, no remedy whatever existed for the wrong for which it was the purpose of the act to provide a remedy.

It can scarcely be necessary to review, at any length, the cases in this country which have affirmed the same doctrine. They will be found, with a single exception, I think, to follow the same rule, deriving it indeed from the same source, but affirming in the strongest manner its binding authority. The case of *Carey* agt. *Berkshire Railroad Company*, (1 *Cush.* 475,) was an action on the case to recover by a wife for the loss of her husband by the carelessness of defendant's agents. It was not founded on the Massachusetts statute, which had provided a remedy by indictment and fine, which was bestowed upon the widow and heirs for their indemnity, but was a common law action, seeking a private remedy solely. The court held that the action could not be maintained, and they cite the case of *Baker* agt. *Bolton*, and the principle laid down by Lord ELLENBOROUGH, with approbation, and add: "Such we cannot doubt is the doctrine of the common law, and it is decisive against the maintenance of this action." In *Hallenbeck* agt.

236          NEW-YORK PRACTICE REPORTS.

Green agt. The Hudson River R. R. Co.

*Berkshire Railroad Company*, (9 *Cush.* 480,) Ch. J. SHAW in-
cidentally alludes to the same doctrine, and says: "It is per-
fectly well settled as a rule of the common law, that rights of
action for injury to the person die with the person, and it was
the obvious purpose of the statute to reverse this rule and pro-
vide that the right of action should survive" in the cases to
which the statute was made to extend. (*See, also,* 9 *Cush.* 107.)

Expressions of a similar character occur incidentally in
other reported cases, recognizing either expressly or by impli-
cation the same rule. Thus in *Safford* agt. *Drew,* (3 *Duer,* 637,)
HOFFMAN, J., says: "In the first place, it is to be noticed that
by the rules of the common law, before the statute, no action
could be maintained by the personal representatives of a de-
ceased person for loss or damage resulting from his death."
So, also, in *Quinn* agt. *Moore,* (15 *N. Y. Rep.* 436,) COM-
STOCK, J., speaking of the case of the mother deprived of the
services of her son, by the act which destroyed his life, says:
"The common law gave no action for this injury. The stat-
ute, possibly with greater justice, declares a different princi-
ple, and holds the wrongdoer liable to make compensation."
But it is needless to multiply citations, since the cases,
wherever they allude to this doctrine directly or by implica-
tion, hold the same language. It may be added, however,
that in Kentucky, Ohio, and Pennsylvania, decisions have
been made, either affirming explicitly the same doctrine, or
recognizing the unquestioned existence of the common law
rule. (See *Eden* agt. *Lex. and Frank. R. R. Co.,* 14 *B. Mon.*
204 ; *Wesley* agt. *E. H. and D. R. R. Co.,* 1 *Handy,* 481 ; and
*Miller* agt. *Urmbehoven,* 10 *S. and R.* 31.)

The case of *Plumner* agt. *Webb, &c.,* cited from *Ware's Re-
ports,* arising in the U. S. District Court of Maine, to sustain
the opposite view, is not in conflict with the common law
rule so well established and recognized so often. It was an
action brought by the plaintiff, as the father of a boy who had
been cruelly beaten by the defendants, the captain and mates
of a ship, the death of the child having resulted from the long
continued ill usage he had received. The action was founded

on the assault and battery, and alleged loss of service in consequence of the ill treatment. All the court attempt to decide is, that the remedy for the loss of service did not abate by the death of the child, but this cause of action survived to the parent. The action was not to recover for the death of the child *per se*, but for the loss of service, although if that fact had been established, the death might, perhaps, have been taken into the account by way of enhancing the damages. It appeared, however, in the case, that the boy had been bound to the service of the captain, and thus the relation on which alone the action was grounded not existing between the plaintiff and the child, the court ruled that the action could not be sustained. It will be seen, therefore, that it is no authority to sustain the principle for which it is cited, and whatever fell from the court on this point was incidental, and not necessary to the decision that was really made in the cause.

The only exception then, if exception it can be called, to this uniform current of decisions, is the case of *Ford* agt. *Monroe*, (20 *Wend.* 210.) As it stands, the case is certainly anomalous—sustained by no precedent, and in plain conflict with all previous authority. As the case is stated, the plaintiff was allowed to recover damages for the death of his son of ten years of age, who was run over and killed by the servants of the defendant, such damages being, among other things, alleged to be the loss of service of the son for a period of ten years, and the sickness of the plaintiff's wife in consequence of the occurrence. What other proof of damages was given does not appear; but as the jury only gave a verdict of $200, I should infer that the court must have charged on the subject of these special damages claimed with some hesitation. However that may be, when the case came into the supreme court, the main ground relied upon to obtain a new trial, was that the relation of master and servant was not established, and this the court pass upon as *the* question in the case, and all they say upon the subject of damages is in four lines, and is merely to the effect that as they were specially laid and were proved to have been the consequence of the principal act, they

come within the well settled rule of special damages, which amounts to little more than saying they were special, because they were specially laid, a truism that it required no great effort of legal learning to announce. A case thus presented and thus disposed of, can hardly be accepted as an authority which shall overthrow a principle of the common law, so long settled and acquiesced in as to have become quite elementary.

Concerning this case, it is well remarked by Judge MET-CALF, in 1 *Cush.* 479, that "no question was there raised concerning the legal right of the plaintiff to recover damages caused by the killing of his son. For aught that appears, that point was assumed and passed *subsilentio*, both at the trial and in banc." There is also an incidental reference to this case by Judge BRONSON, in *Pack* agt. *The Mayor of New York*, (3 *Coms.* 493,) where, citing it with an apparent *dubitanter*, he says : "I have a strong impression that the father could recover nothing on account of the injury to the child, beyond the physician's bill and the funeral expenses."

I am constrained by these considerations, to reject the authority of this case, and abide by the common law rule, that an action by a husband for the loss of his wife, by the careless and negligent act of a third party, can only be sustained where some period intervened between the time of the injury and the time of dissolution, during which he can be said to have suffered the loss of her service and society, and incurred expense and underwent anxiety and distress upon her account. Where death is the concomitant of the collision, and life departs at the instant the shock is received, no action for loss of service can be sustained, because there is no time during her life when it can be said that the husband has lost the service and society of his wife in consequence of the injury complained of. This may be thought a narrow ground on which to place any right of recovery, but there is no other on which the common law rule can be overcome, which declares that the mere death of a human being cannot be complained of as a civil injury to be compensated in damages.

I should have been happy in this case to have arrived at a

Green agt. The Hudson River R. R. Co.

different conclusion, but the law will not bend to accomodate our private views or gratify our personal desires. I have no alternative but to administer the law as I find it—no dispensation from its injunctions to stand by its ancient landmarks. "*Non quieta movere*" is a good maxim in jurisprudence, however much it may be disregarded in civil and political affairs.

There must be judgment for the defendant on the demurrer with costs.

NOTE.—Probably it did not occur to the learned judge in deciding this case, to consider the death of the wife as a *loss of property*, as was done in the several actions in the *Wiswall* cases, (see *Yertore* agt. *Wiswall, ante, page* 8,) arising under the statute of 1847–9. Such a construction, as a matter of principle, would seem to apply as well to a common law action, as one under the statute; but would not probably suggest itself as proper without the statute authority, which was claimed for it in those cases.

Is it possible that the *cause of action* in causing death by wrongful act, &c., which has been classed and settled for two hundred and fifty years as one *of personal injury*, is changed by a statute which merely gives the representatives of the deceased party an action for damages in causing such death, which the common law did not give?

It seems to involve this novel proposition, that because a cause of action is such that a party at common law has no remedy on it, and a special statute to give such remedy is necessary, therefore, such statute being remedial, the cause of action is changed.

An "action" is one thing, and a "cause of action" is quite another; it is the latter which survives, and is assignable or not. Hence the necessity in the *Wiswall* cases, of construing a man, like a box of pig lead when lost overboard, as personal property. Having had occasion to express some views in relation to the *survivorship* of an action under the statute of 1847–9, in a note to the case of *Yertore* agt. *Wiswall, (ante, page* 8,) an opportunity is now presented of giving an authority on that subject, not then found, which no good lawyer will question. The statute of 9 & 10 *Victoria*, is very similar to ours in its essential features. In *Broom's Legal Maxims, (4th ed.* 565,) treating of the survivorship of actions, it says: "For a tort committed to the person, it is clear, then, that at common law no action can be maintained against the personal representative of the tort feasor, nor does it seem that the recent statute, 9 & 10 *Victoria*, c. 93, supplies any remedy against the *executors* or *administrators* of the party who, by his 'wrongful act, neglect or default,' has caused the death of another; for the first section of this act renders that person liable to an action for damages, 'who would have been liable if death had not ensued,' in which case, as already stated, the personal representatives of the tort feasor would *not* have been liable." If these views are correct, the statute in terms prohibits the survivorship of the action brought under it, and necessarily gives a legislative construction to the cause of action, to wit: that it is the same after as before the death, injuries to the person.—[REPORTER.