## Lofus Hyatt v. Aaron H. Adams.

*Damages at common law, for death of human being.* At the common law no
civil action can be maintained for the death of a human being, caused by
the wrongful act or negligence of another, or for damages suffered by any
person by reason of such death; but where death does not at once ensue,
a person entitled to the services of the one injured, may recover for the loss
accruing between the injury and the death, and such action is not barred
by the death.

*Damages in favor of husband for injuries to wife, prior to death: Mental suffer-
ing.* In an action by the husband to recover damages for injuries not wil-
fully inflicted upon his wife during a surgical operation, and which resulted
in her death: *Held,* that he was entitled to recover only for the actual
damage caused to him by the injury, and which accrued prior to her death;
and that he could have no action for his or her mental suffering, as such
action must be restricted to the person who received the physical injury.

*Exemplary damages: Motive.* Where in a case like this, the evidence shows
no evil motive in the commission of the act, exemplary damages cannot
be given by the jury; but they must be confined to such as are proven.

*Pleading and Evidence: Damages.* The declaration in this case alleged that
plaintiff had incurred certain expenses resulting from the injury to his
wife. *Held,* that in the absence of any proof, they could not be considered
in the verdict.

*Evidence of mal-practice: Exclamations of pain.* Evidence of exclamations of
pain and suffering uttered by the deceased during and after the operation —
some of them being in the absence of the defendant — are to be considered
as original evidence of suffering, and admissible as bearing on the alleged
malpractice of defendant; but they are not admissible for the purpose of
aggravating the damages.

*Heard April 6th and 9th. Decided October 22nd.*

Error to St. Joseph Circuit.

This was an action on the case to recover damages
sustained by plaintiff by reason of mal-practice, and gross-
negligence of defendant in the exercise of his profession
as a surgeon, while in attendance upon plaintiff's wife;
and by reason of which she died.

The declaration alleged the loss of service, and the
comfort and society of plaintiff's wife, his mental suffer-
ing, and the expenses attending her necessary care.

The alleged errors are stated in the opinion.

Judgment was rendered for the plaintiff below.

HYATT v. ADAMS.

*Riley & Shipman,* for plaintiff in error.

1. The court erred in admitting the declarations of Lucinda Adams, during and after the operation. — 1 *Greenl. Ev.* § 102; 6 *East,* 188; 8 *Watts,* 355; 7 *Cush.* 581; 7 *B. & Ald.* 90; 8 *Bing.* 376.

2. Although a husband may bring an action jointly with his wife for an injury to her (if it does not result in her death), or if he is deprived of her company and assistance, he may also bring a separate action; yet the damages is a question of law as well as of fact in all such cases. — 2 *Black. Com.* 140.   In all such cases the husband will be confined to his actual damages — 5 *T. R.* 359; 2 *Greenl. Ev.* § 253; 2 *Hilliard on Torts,* 586; 32 *Maine,* 586; 35 *Id.* 89; 1 *Gill. (Ill.)* 46; 20 *Wend.* 210; 3 *Comst.* 489; 2 *Kern.* 273; 4 *Id.* 310; 21 *Conn.* 557 — and for the reason that the wife would have had a right of action if she had lived, and her representatives still have under our statute. 2 *Comp. L. Ch.* 151; 24 *Wend.* 420; 4 *Denio,* 461; 15 *N. Y.* 419; 5. *T. R.* 359.

3. In a civil court the death of a human being can not be complained of as an injury. — 1 *Campb.* 493; 1 *Cush.* 475; 1 *Hill. on Torts,* 83 *and N. (a.);* 4 *Allen,* 55; 6 *Louisiana,* 495; 14 *B. Monr.* 204; 1 *Handy,* 481; 25 *Conn.* 265.

The plaintiff must be confined to the mere loss of service.

Defendant is liable, if at all, to a suit from the representatives of the deceased, for the benefit of the next of kin. — 2 *Comp. L. Chap.* 151.

This act is the same, in effect, as the 9th and 10th Victoria, called Lord *Campbell's Act,* which has been adopted in many of the states.. In such an action the real damages for the injury may come up. — *Carey and Wife v. Berkshire R. R. Co.* cited above; *Bramberger v. Cleis, L. Reg.* Aug. 1865; 15 *N. Y.* 423.

*H. F. Severens*, for defendant in error.

No question is, or can be raised, as to the right of the plaintiff to recover for the loss of service, comfort, and society of the wife, during the time she lived after the operation, if that loss resulted from the defendant's mal-practice; and the declaration is carefully limited to the results occurring during her life time.

That the husband has a legal interest in the wife's services and society, cannot be doubted.

The employment of the defendant to take the care and management of the plaintiff's wife, and to remove the tumor, created a duty to the plaintiff on the part of the defendant, to bring and apply a reasonable degree of skill; and for his failure to do so, and the resulting injury, he is legally responsible to his employer.

The principle rests upon solid grounds of reason and of law.

For the damages claimed in the declaration, the husband must sue alone. This is the rule of the common law.— 1 *Chit. on Pl.* 73; 2 *Id.* 642, '3, '4 *and notes*, 865; 18 *Johns.* 443; 12 *How. Pr.* 322; *Ware*, 69; 14 *Ind.* 595.

Assuming that at common law the death of a human being cannot be made the ground of legal action, it is to be observed that the cases go no further than to hold that when the death immediately follows the injury, no action can be maintained. Where an interval happens between the injury and the death, the party may recover. — 1 *Campb.* 493; 28 *Barb.* 9; 1 *Cush.* 475.

Let us now proceed to the examination of the particular questions arising upon the record.

1. It is assigned as error that the court admitted that portion of the evidence of Aaron H. Adams, which detailed the exclamations and expressions of suffering of his wife after the operation.

It was material for the jury to know the results of the operation, and the effects produced by it, as shown by the subsequent condition of the patient. The exclamations of pain and complaints of suffering of a person whose condition is the subject of inquiry, are admissible as original and competent evidence of the fact to be proved.— 1 *Greenl. on Ev.* § 102; 1 *Phill. on Ev.* ( *C. H. and Edw. Ed.*) 182; 28 *N. Y.* 345; 32 *Id.* 597; 41 *N. H.* 135; 32 *Vt.* 591; 7 *Cush.* 581; 15 *B. Mon.* 236; 26 *Ga.* 171; 30 *Ala.* 562; 33 *Id.* 529.

The only exception is, that what is merely narrative of past events, is not admissible except perhaps when made to a medical adviser for the purpose of prescription.— *Bacon vs. Charlton, supra; Allen v. Van Cleave, supra.*

2. Gross negligence, or a failure to bring and use a reasonable degree of skill in the exercise of defendant's profession, would create a liability, and the damages must necessarily be determined by the jury in view of all the circumstances of the case.— 5 *Denio,* 213; 5 *N. Y.* 422; 6 *Id.* 233; 33 *Id.* 52; 20 *Barb.* 343; 27 *Id.* 512; 31 *Id.* 171; 2 *Kern.* 313; 3 *Seld.* 266; 4 *Id.* 37; 43 *N. H.* 580; 11 *Wis.* 160; 6 *Clarke Ia.* 191; 9 *Ind.* 528; 1 *N. J.* 597; 19 *Ohio,* 337.

3 To entitle the plaintiff to recover for his mental agony during the three days prior to his wife's death, he need not show that the injury was wilful. Irrespective of exemplary or punitory damages, the plaintiff was entitled to recover for his mental suffering under the most restricted rule of damages to be found in the books, provided the injury, in the language of the court, "was the result of the defendant's want of ordinary, average care and skill."— 1 *Campb.* 493; 3 *Esp.* 19; *Sedg. on Dam.* 653; 1 *Cush.* 451; 9 *Allen,* 478; 13 *Mich.* 63.

The plaintiff was entitled to damages.— *Sedg. on Dam.* 38 ( *marg. p.* ); 13 *Ia.* 128; 4 *Greene Ia.* 555; 27 *Conn.*

293; 13 *Cal.* 599; 10 *N. H.* 130; 36 *Id.* 9; 31 *Miss.* 156; 36 *Id.* 660; 22 *Conn.* 290; 29 *Id.* 496; 3 *Met.* ( *Ky.*) 311.

The failure to exercise good faith, gross negligence, falling short of positive wilfulness, is equally a ground for exemplary damages as wilfulness. In addition to the above authorities, see 11 *Mich.* 542.

CHRISTIANCY J.

The plaintiff in error (defendant below), was a physician employed by Adams (plaintiff below), to remove a tumor from the uterus of his wife. The wife died three days after the operation; and as the plaintiff below alleges, and the evidence tends to show, the death was produced by mal-practice — the want of proper skill and care in performing the operation. And it is not too much to say that the tendency of the evidence on the part of the plaintiff below, was to show such a total want of skill, and such a degree of carelessness, as would in law make the defendant below guilty of manslaughter.

The action is not brought under the statute, but at common law; the plaintiff in his individual capacity claiming damages, first, for the loss of the services and society of his wife during the three days prior to her death; second, for expenses incurred in nursing and taking care of her during the same period; and, third, for the agony and distress of mind suffered by him in consequence of the injury, " from thence hitherto," etc.

There was no proper evidence of any expenses incurred.

The only proof of pecuniary damages was the loss of service, shown to be worth fifty cents per day, or one dollar and fifty cents for the three days.

The first question for our consideration is, whether the action can be maintained by the husband for the damages in question, at common law.

HYATT v. ADAMS.

It is admitted on all hands, and cannot be denied that, at common law, no civil action could be maintained for the death of a human being, caused by the wrongful act or negligence of another, or for any damages suffered by any person in consequence of such death.—*Carey v. Berkshire. R. R. Co.* 1 *Cush.* 475; *Kearney v. R. R. Co.* 9 *Id.* 109; *Hollenbeck v. R. R. Co. Id.* 480; *Whitford v. Panama R. R. Co.* 23 *N. Y.* 465; *Dickins v. R. R. Co. Id.* 158; *Ohio and M. R. R. Co. v. Tindall,* 13 *Ind.* 366; *Eden v. L. & T. R. R. Co.* 14 *B. Monroe,* 204; *Green v. Hudson R. R. Co.* 28 *Barb.* 9.

But it is claimed that this is the whole extent of the common law rule, and that it does not forbid an action in such case for damages accruing to parties other than the deceased, prior to and not in consequence of the death. Whether the rule is subject to this qualification, or whether it does not prohibit any action for the *act* or *negligence* causing the death, and thus apply equally to the damages before and after the death, is the main question here.

By the earliest authorities upon this point, those in which so far as can now be ascertained the rule was first laid down and established, it applied equally to damages accruing prior to the death, and to those which accrued subsequently and in consequence of it; as it forbade any action for the act or negligence which produced death. And the only reason given in those authorities for the rule is co-extensive with the rule as thus applied — the merger of the private action in the felony — that by the death, the act or negligence producing it has now become an offense to the Crown, being converted into a felony; and this hath drowned the particular offense or private wrong, and the action is thereby lost.—*Higgins v. Butcher, Yelv.* 89; *Brownlow,* 205; *Cooper v. Witham* and *wife, Sid.* 375; 1 *Levinz,* 247.

But this reason thus nakedly stated, resting upon artificial distinction rather than any real principle, and savoring more of the verbal logic of the schoolmen than of justice or common sense, has not proved satisfactory to some of the

16 MICH.—N.

courts and the text-writers of this country; and it has been suggested, and sometimes asserted without qualification, that the only true reason for the rule established by the foregoing authorities, was the forfeiture which took place upon conviction for felony: all the property of the felon (as well as his life) being forfeited to the Crown, and an action for this reason being useless. And as no such forfeiture takes place in this country upon conviction for felony, it has been urged that there is no foundation here for the rule; that the sole reason of the rule having failed, the rule itself should cease. And if it were clear that this was the only reason for the rule, I should agree in the conclusion.

But this argument, and this conclusion, are altogether too broad for those who admit, as all now must admit, that the common law, both in this country and in England, still excludes all damages accruing in consequence of the death, whether the means producing the death were felonious or not. And the argument, if valid at all, would go to the extent of sustaining the action for the death, or the damages resulting from it, as well as for those accruing before. Merger, whether resting on the ground of forfeiture or not, furnishes no ground for this distinction. Forfeiture does not seem to have been assigned in England as the reason of the merger, nor the reason for the rule excluding an action in cases of felony — at least by any of the decisions which established and settled the rule. But this idea seems to have grown up in this country only because it was thought it would have furnished a better ground for the rule denying the action, than the naked ground of merger.

But there is still another objection to resting the common law rule (forbidding the action) upon the forfeiture which takes place in felony — an objection, it will be seen, which tends equally to show that merger was not the ground, or at least the only ground of the rule. If it rested solely upon the ground of merger, or that of forfeiture, or both

combined, it would be very difficult to discover any ground for a distinction between the different classes of felonies to which the forfeiture was a common incident.   But felonious homicide, and other felonies, should be placed upon the same ground.   I do not assert that any such distinction has been maintained in England in reference to the rule we are now discussing.   My own opinion is that such a distinction between felonies has not been maintained in the English authorities.   But those who assign merger or forfeiture as the real ground of the common law rule (forbidding an action), as the rule has been understood and acted upon in England in modern times, will be under the necessity of showing the existence of such a distinction between felonious homicide and other felonies already noticed; since it is quite clear that, not long after the cases to which I have alluded, the doctrine of strict merger was abandoned as to other felonies, without any intimation of an exception of felonious homicide, and it became and still remains well settled that after a trial and conviction or acquittal for the felony, an action may be maintained for the civil injury. See 1 *Latch*, 144; *Styles*, 347; 1 *Hale's P. C.* 546; *Crosby v. Leng*, 12 *East*, 409, 412, 413; *Peer v. Humphrey*, 2 *Ad. & Ellis*, 495; *Stone v. Marsh*, 6 *B. & C.* 551; *White v. Spettigue*, 13 *M. & W.* 603.

This is but a suspension of the civil remedy until the offender has been tried for the public offense; and it is based upon grounds of public policy, making it the interest of parties who have suffered the private injury to prosecute the offender, to perform their duties to the public, before they seek private redress.   See *Crosby v. Leng, Supra; Styles,* 346; *Stone v. Marsh, Supra; and* 4 *T. R.* 332, 333.   This suspension of the remedy, however, is still generally spoken of in England under the old designation of merger, and some confusion seems to have been the result; though the courts have explained it by saying it is only a merger for

the time being, till the offender has been tried and convicted or acquitted of the public offense.    It is difficult to see why the reason given for this suspension does not apply as strongly to felonious homicide as to other felonies, or why in the one case the civil action should be held to be absolutely merged in the felony (or cut off by forfeiture), and in the other only suspended; and I have not been able to find any English case which establishes or authorizes such a distinction.    In one case in Kentucky such a distinction seems to be asserted to have existed at common law. — *Eden v. L. & T. R. R. Co.* 14 *B. Mon.* 204.    But I find nothing in the English cases to warrant the assertion, except the very unsatisfactory inference to be drawn from the fact that no decision is found in which this doctrine of suspension has been affirmatively applied to a case of felonious homicide.

But if the doctrine of suspension of the remedy be applicable to a case of felonious homicide as well as to other felonies, as I think it is in the English law, it will not any more than that of merger or forfeiture furnish any satisfactory explanation of the distinction between damages accruing prior or subsequent to the death; though if applicable here as in England, it would defeat the present action as effectually as merger or forfeiture, as it does not appear that the defendant has been prosecuted or tried for the offense.

But whatever considerations of public policy may have existed, or may now exist in England, requiring the offender to be tried and convicted or acquitted on the criminal charge, before the civil action is allowed, I do not think that such considerations exist here, or at least to such an extent as to justify the suspension of the civil remedy, and I think the general understanding of the courts and the profession, in this state, has been that the civil remedy was in no way dependent upon the criminal prosecution.

Public prosecutions for offenses are not in this country, as in England, left to be instituted or conducted by private

parties, and at their own risk as to costs. We have public prosecutors legally bound to institute and conduct such prosecutions, and to see that grave crimes do not go unpunished — see *Boston, etc., v. Dana,* 1 *Gray,* 83, where this question is fully discussed, and the English rule of suspension of the remedy denied to be applicable in Massachusetts — and this seems to be the more general American doctrine. And notwithstanding the doubt expressed by Mr. Bishop (1 *Bish. Cr. L.* §§ 337 *and* 338), I am entirely satisfied with the reasoning of the case last cited.

But as none of the reasons already mentioned have seemed satisfactory for the common law rule (prohibiting an action for the death of a human being, or for the injury which caused it, whichever may be found to be the extent of the rule), another reason has been assigned which would undoubtedly, have been a sound and sufficient reason, so far as it extends. This is the common law maxim: "*actio personalis moritur cum persona*" (see per *Bacon J.* in *Green v. Hudson River R. R. Co.* 28 *Barb.* 9).

This would furnish an adequate reason why no action could be brought by personal representatives, or others, for such damages as the deceased might have recovered for the injury, if death had not ensued, as the action for such damages would not survive. But this reason could have no application whatever to an action brought by a master for loss of service of his apprentice, or by a husband for those of his wife; since in these cases the cause of action could never have been vested in the servant or the wife, and could not be lost by the death. There can, therefore, be no such question of survivorship in an action like the present.

And if this were the true reason of the rule, there would be no reason why the master or the husband should not be allowed to recover damages for the loss of service after, as well as before the death of the wife or apprentice.

So far as I have been able to discover, there is but one English case which expressly holds that at common law an

action for the loss of services of a wife killed by the wrong-
ful act or negligence of the defendant can be maintained
even for the loss of services up to the time of the death, or
which intimates any distinction between the damages accru-
ing before and after the death.     This is the *nisi prius*
case of *Baker v. Bolton,* before Lord *Ellenborough* in 1807.
The case is very briefly reported ; the form of action is not
stated.  It was an action against the defendants as propri-
etors of a stage coach, on the top of which the plaintiff and
his wife were traveling, when it was overturned, whereby the
plaintiff himself was much bruised, and his wife so severely
hurt that she died about a month after.     The declaration,
besides other special damages, claimed damages for the loss
of the comfort, fellowship and assistance of his wife.   Lord
*Ellenborough* told the jury "they could only take into con-
sideration the bruises which the plaintiff himself had sus-
tained, and the loss of his wife's society, and the distress of
mind he had suffered on her account from the time of the
accident to the moment of her dissolution."   "In a civil
court, the death of a human being could not be complained
of as an injury, and the damages as to the plaintiff's wife
must stop with the period of her existence."     No authority
is cited, no reason given, nor anything showing the cause of
the accident or the degree of negligence ; yet the assertion
that "in a civil court the death of a human being cannot
be complained of as an injury," seems to be now universally
admitted both in England and in this country as the set-
tled rule of the common law..  The case of *Ford v. Monroe,*
20. *Wend.* 210 ( the only one, so far as I am aware, hold-
ing a contrary doctrine ), being very generally admitted not
to be law.  See per *Metcalf J.* 1 *Cush.* 478–9.   The action
( in *Baker v. Bolton* ) . being against the proprietors, it is
not at all probable that the death had been caused in a
manner which would render them guilty of felony, and if
the driver was thus guilty ( which is not likely ), this would

not merge, or even suspend the action against the proprietors.— *Gibson v. Minet*, 1 *H. Black.* 612; *White v. Spetigan*, 13 *M. & S.* 603. It is quite evident, therefore, I think, that Lord *Ellenborough*, in announcing the rule, must have rested it upon some other ground than any of those already discussed — upon some ground wholly irrespective of the question whether the killing was felonious or not, and as the action was by the husband for the damages he had suffered, there could have been no question of survivorship. As no reason is given, and the previous decisions, so far as I have been able to discover, are silent as to any reason for the rule where the means of the death were not felonious, we are left somewhat to conjecture, for the reason of a rule admitted to be a settled rule of the common law, as well when the killing is not felonious as when it is.

For myself, I think — and the form of expression in which the principle is announced by Lord *Ellenborough* would indicate that such was his opinion — that the reason of the rule is to be found in that natural and almost universal repugnance among enlightened nations, to setting a price upon human life, or any attempt to estimate its value by a pecuniary standard, a repugnance which seems to have been strong and prevalent among nations in proportion as they have been or become more enlightened and refined, and especially so, where the Christian religion has exercised its most beneficent influence, and where human life has been held most sacred. Among barbarous and half civilized nations, it has been common to find a fixed and prescribed standard of value or compensation for human life, which is often found to be carefully graduated by the relative importance of the position in the social scale which the deceased may have occupied. While this has been the natural result, it has at the same time been, to some extent, the *cause* of their inhuman customs, their barbarous manners and social degradation, and of the comparatively low estimate in which human life has been held among them.

To the cultivated and enlightened mind, looking at human life in the light of the Christian religion as sacred, the idea of compensating its loss in money is revolting; and it can only become reconciled to such an idea by the strong necessity which has grown out of the new modes of travel and business in modern times, by which great numbers are compelled to trust their lives to the skill and vigilance of the servants of corporations, and others in similar positions of responsibility — a state of things which seemed to call for a remedy which should make railroad corporations, steamboat managers, and parties to whom others are compelled to trust for safety, more sensible of their responsibilities, and more careful to secure a high degree of vigilance in protecting the lives entrusted to their care, and at the same time afford relief for cases of great individual hardship, which might otherwise be suffered by those dependent upon the person whose life may be lost. Statutes of this kind have been passed in England and in many of the states of the Union, which may prove beneficial in the way above suggested. But there is still some reason to fear that, like many other human laws, their good effects will be found not unmixed with some incidental evils. The greatest caution has been, and will continue to be required on the part of courts, to prevent the best and most benevolent feelings of our nature from clouding the judgments of jurors and prompting them to most intemperate verdicts, in the vain endeavor to give a money compensation for that which, in its very nature, is incapable of valuation by any such standard. And it will be fortunate in the future if it shall be found that habituating the public mind to the idea of pecuniary compensation for human life has not tended to weaken its safeguards, and to render it less sacred in the popular estimation.

This natural repugnance to which I have alluded, if not the original reason of the rule in question, would at least, in my opinion, have been a much better and sounder reason

HYATT v. ADAMS.

than the reasons which have been given in the cases, or than any consideration connected with the public offense, its grade, or its prosecution; and would at the same time afford an equally satisfactory reason for denying the action for the death or damages resulting from it in cases not felonious, where it seems to be equally established.

And I am by no means satisfied that this is not the only sound and satisfactory basis upon which the common law rule could have been sustained in England, in modern times.

Based upon this ground, the rule would not prevent an action for damages accruing to a party other than the person injured, up to the time of the death, though caused by the act or negligence which produced it; while it would exclude all which might have accrued in consequence of the death. Such seems to have been Lord *Ellenborough's* understanding of the effect of the rule, as applied by him in *Baker v. Bolton.*

From the best examination I have been able to make of the English authorities, I think it is at least very questionable whether, for more than a century past, there has been any recognized legal principle which would have prevented the recovery of damages in such a case accruing prior to the death, to parties other than the deceased. If there has been any such obstacle, it must have been the doctrine of suspension of the remedy in cases of felony until trial of the offense which still goes by the old name of merger in the felony.

The preamble to the statute (9 *and* 10 *Vict. ch.* 93), might, upon a first reading, seem to conflict with this view. "Whereas no action at law is now maintainable against a person who, by his wrongful act, neglect or default, may have caused the death of another person, and it is expedient that the wrongdoer in such cases should be answerable in damages." This might, on first view, if we adhere strictly

to the letter, seem to declare that no action could be maintained by any person for damages occasioned by the injury which caused the death, though accruing before it, as it declares that "no action is now maintainable against the *person* who caused the death." This, however, would be a narrow construction if confined to the preamble alone. But the preamble must be construed with reference to the enacting part, as intended to recite the defect which it was intended to cure by the statute. The whole substance of the enacting part, so far as it bears upon this point, is, "that whenever the death of a person shall be caused by a wrongful act, neglect or default, which would, if death had not ensued, have entitled the party injured" (meaning, as subsequently appears, the deceased), "to maintain an action to recover damages in respect thereof, the person who would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured shall have been caused under such circumstances as amount, in law, to a felony; such action to be brought within twelve calendar months after such death, by and in the name of the executor or administrator of the person deceased, and to be for the benefit of the wife, husband, parent or child of the person whose death shall have been so caused. And in such action the jury may give such damages as they may think *proportioned to the injury resulting from such death,* to the parties respectively for whose use such action shall be brought." Now the whole scope of this enactment is confined to the recovery of damages " *resulting from such death.*" It has no application to any cause of action or damages accruing prior thereto; and the preamble must be construed as co-extensive with this enactment, and intended to point out the only deficiency which needed a remedy, or was intended to be remedied. I do not regard the clause "notwithstanding the death," etc., "shall have been caused under such circumstances as amount in law to a felony," as referring at all to

HYATT v. ADAMS.

the old doctrine of strict merger, which I think had been wholly abandoned; but I regard it as inserted for abundant caution, and to remove any doubts as to the effect of the authorities. It must be remembered that this statute was needed, and intended as much for cases not felonious as for those which were; and the clause in question would seem to be intended as a declaration that both classes should be placed upon the same ground, whatever doubts might otherwise have been entertained of this intention, in consequence of the previous state of the law. But at most this clause must be regarded as intended to meet the doctrine of merger in the shape it had assumed at the time — which was that of suspension instead of merger, though still called by the old name,— and this, as I have already stated, I do not think has any force in this state.

The same clause in reference to felony is found in our own statute (*Comp. L.* § § 5003 *and* 1998). But this (like the whole section regarding the right of action) is copied literally from the English statute, and can have little effect as a declaration of the previous state of the law here upon this particular doctrine of merger, when we know the little care taken by legislative bodies in copying statutes, to eliminate unnecessary clauses.

Upon principles of justice and common sense, I think the plaintiff, in a case like the present, should be allowed to recover his actual damages caused by the injury and accruing prior to and not in consequence of the death; and I can discover no substantial objection to such recovery in any recognized principle of the common law applicable here.

Our statute (*Comp. L.* § § 5003, 5004) does not extend to the case, and has no application to the damages here in question, as all the damages which could be recovered for the injury, would be for the benefit of the next of kin of the wife, of whom the husband is not one (*Dickins v. N. Y. C. R. R. Co.* 23 *N. Y.* 158), and the damages to which

the statute extends, are only those resulting from the death. For these no action could be maintained at common law.

The injustice of denying the action for damages accruing up to the time of the death, may not be very glaring in the present case, in which the actual damages proved are exceedingly trivial. But the action cannot be denied upon any principle which would not be liable to do great injustice in other cases which may arise. Suppose the wife had lingered for a year or more and then died in consequence of the injury, and the husband in the mean time had been put to thousands of dollars of expense, in physicians' bills, medicines, nursing and attendance. No one can doubt that at any time while she was yet living, the husband's right of action would have been perfect as to the damages accrued up to the time of the action. But she dies the next day after the action is instituted; does his action abate by *her* death? Has he lost his right, and must he now be denied any compensation for the injury, because it has proved fatal to her? If so, it seems to me a more substantial reason should be shown for this denial of justice than any I have yet been able to discover. I therefore agree entirely with the Supreme Court of Indiana, in *Long v. Morrison*, 14 *Ind.* 595, that the husband's action which had previously vested, is not extinguished by the subseqent death. See also *Green v. Hudson River R. R. Co.* 28 *Barb.* 9; *Peck v. Mayor*, 3 *N. Y.* 493; *Eden v. L. and T. R. R. Co.* 14 *B. Monroe*, 204; and *Whitford v. Panama R. R. Co.* 23 *N. Y.* 479, 480.

The result at which I have arrived renders it necessary to notice some other questions raised upon the trial.

If the injury was not wilful on the part of the defendant, but merely the result of his want of ordinary average care and skill in his profession, was the plaintiff entitled to recover for his own mental agony on account of his wife's sufferings for the three days prior to the death? This is the form in which the question is presented: the judge

having charged the affirmative.    This question is nearly allied to that of exemplary damages which I shall presently notice, and does not call for an opinion upon the rule which should be applied to a case where the injury has been wilful; and upon this we express none.

Lord *Ellenborough*, in *Baker v. Bolton*, above cited, seems to have permitted the plaintiff's distress of mind on account of the wife's sufferings up to the time of her death, to be considered by the jury as an item of damages.    This was at *nisi prius*, and the case does not appear to have come before the court in *banc*, and the question is whether this view can be sustained.

Upon principle there are some difficulties in the way of sustaining an action upon such grounds in a case like the present.    In the first place it is manifest that the chief cause of the plaintiff's distress of mind must have been the death of his wife in which the injury resulted, rather than the pain she suffered during the operation, and prior to her death; and it would be very difficult for a jury to apportion the plaintiff's mental agony, or to determine with any thing like accuracy how much of it was attributable to one of these causes, and how much the other, and practically it is to be feared that no such distinction would be attempted in the verdict.

I do not claim that this consideration is conclusive of the question, but that it is entitled to some weight.

But there is a more serious objection than this.    If the plaintiff has a right to sustain an action for his distress of mind on account of his wife's suffering, upon what principle can the law refuse a like action in behalf of the father, mother, brother or sister of the deceased, who may have sustained as much mental agony on the same account as the husband?    And if these, who are more nearly related, and may have suffered more, why may not her more distant relatives sustain an action on the same principle for their respective portions of mental agony according to their

degrees of relationship? Or if the amount of recovery is to be governed by the amount of actual suffering of the plaintiff as shown by the proof, what is to prevent an action by any sympathizing neighbor who has witnessed the wife's agony, and perhaps suffered just as keenly from it as the husband or relative? If the principle be once admitted, who shall prescribe its limits, and can any limits be prescribed which would not be purely arbitrary?

These considerations show the propriety and good sense of the rule which restricts the right of action for mental suffering to the person who has received the physical injury. Had the wife survived the injury, this right of action would have been hers, and neither the husband in his own right, nor any other person could have sustained an action for it; and her death does not transfer it to him. See *Whitney v. Hitchcock,* 4 *Denio,* 461; *Richards v. Farnham,* 13 *Pick.* 451.

The court below was requested to charge that "if the plaintiff shows himself entitled to maintain this action, and if from the evidence no evil motive be imputed to the defendant, then the rule of compensation is fixed by law, and it is not to be submitted to the discretion of the jury that in such a case exemplary damages are not allowable."

The court gave the instruction with the following qualification: "As I have just said to you, so here I repeat the sentiment, that you are not empaneled to punish the defendant; but to establish justice and right between the parties, so far as your verdict may be capable of so doing." And again, the court, in answer to a request of the plaintiff, charged, that "the jury should, if they find that gross negligence is established by the proof, *or that the defendant failed to bring and use a reasonable degree of skill, equal to the ordinary average of skill possessed by gentlemen of the same profession,* award by their verdict such damages as, in their opinion in view of all the circumstances of the case, ought to be awarded against the defendant and in favor of

the plaintiff." We think this charge, taken together, was erroneous. It left, and must have been understood by the jury to leave the whole subject entirely open to their unlimited discretion without any legal rule whatever to guide them.

This action for loss of services (at least where no evil motive or even gross negligence is shown) is one which in its very nature, would seem to contemplate the recovery of such actual damages only as should be shown by the proof, under the ordinary rules of evidence. It would seem to be designed for compensation of pecuniary loss only; leaving no room for merely speculative, discretionary, or exemplary damages. See *Whitney v. Hitchcock, ub. sup.*

It is not like the action on the case for seduction, which stands upon peculiar reasons of its own, and where loss of service has grown to be almost as much a matter of fiction, as the loss and finding of the goods in trover.

The charge asked by the defendant below upon this point was correct, and should have been given without qualification. A case can scarcely be imagined in which a specific charge could be more essential to the protection of the defendant's legal rights, or in which a general charge, leaving law and fact to the discretion of the jury would be more likely to lead to an exorbitant verdict. The evidence in the case showed legal damages to the amount of one dollar and fifty cents. The verdict was for two thousand dollars.

The court also erred in not charging, without qualification, as requested by the defendant, that the plaintiff, not having offered any evidence of expenses incurred or paid in regard to his wife, in consequence of the alleged wrongful acts of the defendant, he cannot recover any damages for any such expenses alleged in his declaration, and in adding thereto the following: "But the jury must consider all the facts in the case under these instructions of the court, and award, if damages at all, such damages as in the judgment of the jury, ought to be awarded against the defendant and

in favor of the plaintiff." This seems to have been a hint to the jury that though they could not give the plaintiff expenses *as such,* because none were shown, yet, if they thought from the evidence upon other points that the case was rather a hard one for the plaintiff, they might accomplish the end sought by the plaintiff, by giving him damages in a general way, for such expenses as he might have suffered under the circumstances, but which he had not attempted to show.

The court did not err in admitting the evidence of exclamations of pain and suffering uttered by the deceased, and her complaints as to the nature of her suffering during and after the operation, though some of them were in the absence of the defendant. This is the natural and ordinary mode in which physical pain and suffering are made known to others, and the only mode by which their nature and extent can be ascertained. Such exclamations and statements are therefore original evidence; but it was, of course, open to the defendant to show, or to raise an inference if he could, that they were feigned, or intended to deceive. They were clearly admissible as tending to show the malpractice of the defendant, though not for the purpose of aggravating the damages.

It may be that cases of this kind need a remedy which is not adequately given by the common law; but this is a question for the legislature and not for the courts.

It is quite evident that the real grievance which the plaintiff has sustained, is not that for which his action purports to be brought; but the loss of his wife for which no action lies at common law, nor in his behalf under the statute.

The judgment must be reversed, with costs, and a new trial awarded.

MARTIN CH. J. and COOLEY J. concurred.

CAMPBELL J.

I think the exclamations of pain, and the remarks descriptive of her sensations which fell from Mrs. Adams during her suffering were admissible as part of the occurrences themselves; such evidence being the only accessible proofs of facts not open to the observation of others, and being the ordinary result of physical distress. But I think her statements concerning Hyatt are not admissible. Such charges are receivable under certain circumstances in criminal trials, as dying declarations, but not in other suits. No separate exception, however, was taken to the receipt of these specific complaints, and the question only becomes important, inasmuch as a new trial is granted on other grounds.

I think the court erred in the rule of damages. The right of a husband to sue for injuries to his wife only exists where he has thereby been deprived of her society or services, and it has been uniformly held that he could claim no redress for injured feelings, and that he could claim nothing for the loss he sustains by her death.

I have not been able to satisfy my mind as clearly as I should like upon the main question whether any action lies after the death of the wife, for the loss previously sustained. The reason given that a private action becomes merged in a felony, can not apply to cases where the defendant is not a felon, and can not, in most felonies (if not in all), apply where the felon has been prosecuted. The rule that no action will lie for death, while evidently an ancient and settled principle of law, must rest upon some other foundation. And I have been very strongly impressed with the belief, in the entire absence of precedents for suits like the present, that this maxim has been regarded in England as broad enough to prevent any suit for an injury which causes death. The case of *Baker v. Bolton*, is not distinctly in point, for there the husband had an unquestionable right

to damages for the wrongful act, because it injured him as well as his wife; and circumstances of aggravation are in such actions very generally allowed their weight. That case has never been referred to by the English authorities, so far as I can find, as settling any doctrine, and there is no English precedent for any separate suit for damages such as were there allowed. And the preamble to Lord *Campbell's* Act seems inconsistent with the idea that any such suit could be maintained.

There are, however, some American decisions which, without actually deciding this question, seem to go upon the supposition that the law is settled upon the distinction referred to by Lord *Ellenborough,* who was a more than usually accurate *nisi prius* judge. The adoption of statutes here and elsewhere removes any objection which might be raised against such actions as against public policy, and I concur with my brethren in sustaining this action, upon the sole ground that the reasoning in the decisions in this country all tends in that direction, and there are two cases which appear to be in point as adjudications.— *Lynch v. Davis,* 12 *How. Pr. R.* 322; *Cross v. Guthery,* 2 *Root's R.* 95. The rule is not an unreasonable one, and the obscurity which rests over the whole subject, renders it safe to follow any doctrine which has obtained favor in this country. If there had not been so general a disposition here to rest upon the distinction laid down in *Baker v. Bolton,* I should regard the absence of precedents (where causes of action must have been frequent), and the strong language of the preamble to the English statutes, as decisive against maintaining such suits.

As I do not think the present case necessarily presents the question how far a civil action is suspended by a felony, I withhold the expression of an opinion upon it.

Upon the other points I concur with my brother Christiancy, for the reasons given above.