[Reserved by GHOLSON, J. from Special Term, for the decision of all the Judges.]

Before Judges STORER, GHOLSON, and SPENCER.

## STACEY A. WORLEY *vs.* THE CINCINNATI, HAMILTON, AND DAYTON RAILROAD COMPANY.

An action cannot be maintained by a husband, to recover damages for the loss of his wife, or by a father for the loss of service of his child, in consequence of the death of the wife or child, by the carelessness or fault of the agents or servants of a railroad corporation.

STORER, J. delivered the opinion of the Court.

The plaintiff states in his petition, that in August last his wife, without any fault or negligence on her part, but through the carelessness of the defendants' servants, was struck by the cars under their charge, while the same were running on the road track, and immediately killed. He further charges, that he has thereby been deprived of her services as a wife in the care of his children, and the management of his household affairs; that those services were worth at least $500 per annum, to which amount he is injured; that he has lost her comfort, fellowship, and society; that at the time of her death, she was between 41 and 42 years of age, in good health, and would probably have lived about eleven years, on which supposition his damages are $5000. He also states that he has expended a considerable sum for the funeral charges of his deceased wife.

The defendants have demurred generally, and the question is presented for our determination, whether in a case like the present the plaintiff can recover.

There is no reported decision of our own courts to aid our inquiry, or determine our judgment; we must therefore consider the question upon principle, by an examina-

tion of the peculiar rights that attach to the husband by his marital relation.

Legally speaking, the right to the society and fellowship of the wife is secured to the husband, on the sole condition of his protection and support. The duties of each party are correlative. When one refuses to perform the obligations devolving on him, or her, the basis of the common relation is directly impaired. If, moreover, there is a violation of the compact that binds the parties in one, the union is virtually severed, and there can be no claim for the loss of service, or the interruption of social happiness. Hence it is, if the husband abandons the wife, or treats her with indignity, she may seek the protection of friends, and the law will not permit him to ask damages for an injury, that he has thus produced, or tolerate a claim for the loss of her society, whose protection he has surrendered to others, and whose sympathy he does not deserve to enjoy. And so it is, if the wife dishonors her husband, neglects her family duties, or causelessly ignores his just claim to her affection, and her confidence, a judicial tribunal may well determine that her right to be supported by one to whom she is morally a stranger, ought not to be enforced.

It is on the recognition of these reciprocal duties that the rights of the parties depend. When they cease to be performed, the obligations they imply necessarily cease, and it would seem to be immaterial by what act the parties were prevented from their fulfillment, whether their own imprudence or criminality, or the ordinary accidents of life. The relation once entirely severed, there is an end of duty, and consequently of privilege, for the one is dependent on the other.

Having thus suggested the principle, upon which we suppose the right of the husband depends to claim damages for an injury to his wife, let us examine the earlier cases, where the question is considered. Until the decision in Guy *vs*. Livesey, *Cro. Jac.* 501, it was seriously doubted, whether the husband and wife should not be joined in every action, where an injury to the wife was sought to be redressed in damages, no distinction being made in the consequences that followed the act. It was there held, "that in an action brought for the battery of the wife, she need not be joined, as the loss was only her company which pertained alone to the husband, for which he should have his suit, as the master shall have for the loss of his servants' service." The same doctrine was reported in Hyde *vs*. Scyssor, *Cro. Jac.* 538, and subsequently in Young *vs*. Pridel, *Cro. Car.* 89. These are the leading authorities for the suit by the husband for the loss of the wife's society, and the right is placed on the same ground, that gives the master remuneration for the loss of his "servants' service." The doctrine is based upon the hypothesis that the relation of husband and wife, parent and child, master and servant, exists, at the time the right of action accrued, not constructively but actually ; not because the relation once subsisted, but was then in being with all its incidents.

Hence it was that the measure of damages in all such cases was the loss sustained before the institution of the suit. The deprivation of service for any subsequent period gave a new right of action. No future or probable injury could be reasonably anticipated, and even if it could, a remedy was at hand. The unlawful deprivation of service, or social privilege, was a tort continuing until

the mischief was practically remedied, and for each successive trespass a liability was created.

We can find no case, where an action at common law has been brought in England, by the parent or master, for the loss of the child's or servant's service, by the death of either, in consequence of the fault or negligence of an individual, or a corporation. The silence of the books on the subject furnish a strong argument against the right, and justify us in the belief, that no such right has been supposed to exist.

There are two cases, however, in which suits are reported to have been brought by the husband for the loss of his wife's services, under similar circumstances. In Higgins *vs*. Butcher, *Yelv*. 89, which is the first case we find on the subject, it was ruled, "that the husband could not maintain an action, *per quod consortium amicit*," where the wife had lost her life by the fault of another, as the act of killing, being a felony, merged all private rights." This decision was made by Tanfield, Fenner, and Yelverton, Justices in 1607, and from that period until 1806 we find no similar case reported. In the latter year, Lord Ellenborough held in Baker *vs*. Bolton and others, 1 *Camp*. 493, "that in a civil court the death of a human being could not be complained of as an injury," and therefore the plaintiff's claim to damages for the loss of his wife, must stop with the period of her existence.

We know of no other adjudications on the subject in the English Courts, and in each of these we find a different reason given for the judgment. The reasoning in Yelverton we could not adopt, as it is inapplicable to our judicial proceedings. We have no felonies, as at Common Law or by the British Statutes; the commission

of crime here works no corruption of blood, or attainder of estate: the individual doing the wrong, though punishable to the extremity of the law, is still liable for the personal injury he inflicts, and his estate may be legally subjected, by way of indemnity, to the injured party. 4 *Ohio* 376, Raguet *vs*. Roll; 15 *Mass*. 331, Boardman *vs*. Gore; 14 *B. Monroe* 204, Eden *vs*. Lexington and Frankfort Railroad Company.

Although we cannot defer to the reason given for the authority in Yelverton, it is still a very clear indication of what was then deemed to be the law, and if the principle adjudicated had been regarded as unjust, we may suppose that in view of the consequences, some new mode would have been provided by statute, to obtain that relief which was denied by the courts. But the postponement of all legislation on the subject from 4 *Jas*. 1, when the opinion in Higgins *vs*. Butcher was pronounced, until 9 *Victoria*, when the late English Statute was passed, very strongly shows that no new or further remedy was regarded as necessary, to maintain the rights of parties in similar cases.

The ground of Lord Ellenborough's opinion is more in consonance with our jurisprudence, and gives a broader rule for the decision of the question. It was confined, however, to a single point, and did not present, so fully as might have been expected from so profound a jurist, the whole argument; but we may well suppose, that where no precedent could be found for the action, a simple negation of the right to recover was all that he deemed it necessary judicially to affirm.

When it is said that the death of a human being cannot be made the subject of damages in a civil action, we

must infer that to allow the remedy in such a case would be inconsistent with the policy of the law that will not permit the value of human life to become the subject of judicial computation.   The probability of its continuance for any supposed period may furnish to the insurer a calculation of chances, upon which he may speculate, but ought not to be regarded by the courts, unless connected with some fixed interest in property, as in settling the value of an annuity, or determining the present worth of a dower estate.   To extend the principle so far as to sanction the right to recover for the loss of life, by those whose relation to the dead would have authorized an action for an injury to the living, might most seriously lessen the force of marital obligation.   It would tend to the belief, that in all cases where the fault of another has produced an injury, he is responsible for all the consequences, whether they are fatal or not, and the worth of life might be at last resolved into what might be obtained by a verdict. And where the expectation of indemnity for the loss may depend as much upon the ability of the party to pay, as on the nature of the injury he has produced, there may be less care to avoid danger, and less anxiety to prevent a fatal result, from what may have been, under the circumstances, but an ordinary accident.

The American Courts, in considering the question before us, so far as we find any clearly adjudged cases, have uniformly agreed in their decisions.

In 2 *Root* 95, Cross *vs.* Guthery, we find a very meagre statement of the ruling of the Supreme Court of Connecticut, sixty years ago.   It was there held, that a declaration, charging a wife's death to have been occasioned by a surgeon's want of skill, was sufficient to authorize an

action by the husband; for, said the Court, "The rule urged by the defendant is applicable in England only to capital crimes, where from necessity the offender must go unpunished, or the injured individual unredressed." There is no recognition of the doctrine thus asserted, so far as we can find, in any subsequent decision of the Connecticut Courts, and if we regard the amount of the recovery £40, when £1000 were claimed as damages, it is but reasonable to presume the damages awarded were confined to the actual expenditure of the plaintiff during his wife's sickness, and consequent upon her death. We may be permitted in passing to say, that these reports are not regarded as very high authority, either by the courts or the profession.

In Plummer *vs.* Webb et al., *Ware* 75, a father filed his libel in the admiralty against the master and owners of a vessel for the loss of his son's services. It appeared the minor had been beaten on board the ship, and died in consequence of the violence; but the Court held, though the death of the child did not bar the action, yet the recovery could not extend beyond the actual loss; thereby sustaining the law, as it had already been declared in Winsmore *vs.* Greenbank, *Willes* 577, where in a suit for crim. con. by the husband only, per quod, &c., the death of the wife pending the suit did not deprive him of his right to damages for the injury sustained before her decease.

The Supreme Court of New York, in 21 *Wend.* 210, Ford *vs.* Monroe, affirmed the judgment of Cowen, Jus. on the Circuit, where the jury had been charged "that the death of a child by the fault of another, entitled the parent to what the son's services would have been worth until he arrived at his majority;" but in their opinion no

reason is given to sustain the charge, and the point itself is not referred to.   This case is shown to be of little authority, if of any value whatever, by the remark of Chief Justice Bronson, in Pack *vs.* the Mayor, &c. of NewYork, in 3 *Comstock* 493.   "The child," he said, "died within an hour and a half after the injury, and I have a strong impression, that the father could recover nothing on account of the injury beyond the physician's bill and funeral expenses."

We have already alluded to the foundation of the husband's right of action, and within what narrow limits it is confined.   In no case case can he recover in his own name, for the pain of body, or mental suffering endured by his wife, in consequence of an injury to her person; these can only be claimed in an action by the husband and wife jointly; and should she die pending the suit, the whole right is gone, the action is abated.   1 *Bac. Abr. Tit. Baron & Feme K.* 306.

It would seem to be but just, where the meritorious cause of action no longer exists, that what is incidental merely should be excluded from the ordinary rule.   The question of the loss of service only, appears to be too technical, to be sustained by any reason to be found in the books, if the direct injury to the real party cannot be recognized.   Moreover, it is difficult to understand when no remedy is given, or pretended to exist at common law, in behalf of the wife or child, for the loss of a husband, or a father, who is the natural protector, and upon whom perchance both depend for their daily support, that the husband can be allowed to sustain his claim for the deprivation of his wife's society only.   And when it is sought to estimate what is purely social enjoyment, the

elements of which cannot be computed by arithmetic, by the same data, that would authorize an insurance upon life, we cannot but feel that the ideal is merged into the practical, and a price is put upon a condition of loneliness yet to happen, and which may not exist after a year and a day.

The precise question before us has been decided by the Supreme Court of Massachusetts, in 1 *Cushing* 475, Carey et ux. *vs.* Berkshire Railroad Company, and by the Court of Appeals of Kentucky, in 14 *B. Monroe* 204, Eden *vs.* Lexington and Frankfort Railroad Company. A very full examination of the cases, and a careful discussion of principles are found in the opinions of the learned Judges, in both cases. They arrive at the same conclusion, and hold, that for all damages subsequent to the death of the wife, the husband is without remedy; they place their decisions on the ground of the novelty of the actions, the want of authority to support them, and the numerous analogies in the law, that are opposed to any such remedy. We think these adjudications are but the affirmation of what is the established law.

The late statutory remedy in England is founded on the assumption, that without it no right to sue exists; and Judge Coleridge, in deciding the case of Blake *vs.* the Midland Railway Co., 10 *E. L. & Eq.* 443, fully admits the principle. To give more clearly the understanding of the Court of Queen's Bench, upon the extent of the remedy thus provided, it was held, " that the damages to be recovered must be for the pecuniary loss not as a *solatium* or indemnity for the deprivation of domestic happiness." In that case, the representative of the husband brought her action under the Stat. 9 and 10 *Victoria,* ch.

93, and claimed indemnity on the same basis, as that set forth in the plaintiff's petition in this suit; but the claim was disallowed, and the rule of damages thus asserted denied to be the law.   See also 1 *Am. Railway Cases* 446.

Our own Statute, *Curwen* 961, *ch.* 507, has a similar title to the English.   Both propose "to give compensation for causing death by a wrongful act, neglect, or default," and both lead, in their construction, as well as the remedies they provide, to the same practical result.   The New York Statute of 1847, ch. 450, is nearly identical with that of Ohio, intended to provide the same relief, and includes the same class of persons; and the natural conclusion, from the passage of these several laws, must be the admission that, without them, no remedy exists.

This action is not brought upon the Statute, nor is it contended that it could have been, except by the personal representative of the wife: The second section distributes the damages recovered between the widow and the next of kin, which pre-supposes that the wife is deprived of her husband, and very strongly indicates that it was not the intention of the Legislature to extend the remedy to him, should he survive the wife; and such is the construction, we believe, that is given to the Statute of New York, on the same subject.

By the Civil Law, compensation is allowed for the loss of human life; and, it is said, the principle adopted by the English Statute was borrowed from that source, being a substitute for the old mode of mulcting by deodands. In Scotland, the rule has prevailed for centuries, but the remedy is confined to the wife and children, for the loss of the husband and father.   10 *E. L. and Eq.* 439–40, Blake *v.* Midland Railroad Company.   If this is the only

remedy, where the Common Law does not prevail as the rule, we may well conclude that it ought not to be extended to explain or modify the Common Law, or determine what it really is.

Whether it would be good policy to grant any additional legislative relief in cases where the husband can enforce no claim by the law, as it is now administered, is, to say the least, exceedingly problematical. The question involves consequences that need not now be discussed; though we can readily imagine that considerations of high moral duty would forbid the further exercise of any such power. The sanctity of the marriage relation would, perhaps, be more fully appreciated and vindicated, by the denial to the husband of the right to estimate the value of the comfort and fellowship of his departed wife, by the same standard that would be applied to ascertain the wages of a servant, or the hire of a nurse or a housekeeper.

The present action, though novel, is not of first impression. We have examined very carefully, and considered attentively, the very able argument of the counsel who have instituted the suit, and so ingeniously endeavored to sustain the plaintiff's claim, but we must decide what the law is, not what it may be supposed it ought to be. We can find no authority, and we are satisfied there is no sound reason, on general principles, to authorize a recovery by the plaintiff. On the whole case, we hold, there is no claim in the petition that can be legally supported, except for the expenditures actually made in consequence of the wife's death; and for these, as the husband would have been liable, he has the right to recov-

er; as to all the remaining claim for damages, the demurrer must be sustained.

GROESBECK & THOMPSON, for plaintiff.

WORTHINGTON & MATTHEWS, for defendant.