CHARLES MEARS. The (PARMLEE v.). See Case No. 10,766.

---

## Case No. 2,618.
### The CHARLES MORGAN.

[2 Flip. 274;[1] 18 Am. Law Reg. (N. S.) 624.]

District Court, S. D. Ohio. Oct. 24, 1878.

ADMIRALTY JURISDICTION — ACTION FOR DAMAGES FOR WRONGFUL DEATH.

The wife of a passenger brought a libel in rem to recover damages for the death of her

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

husband, caused by the negligence of the officers of the vessel. Plea to the jurisdiction. Jurisdiction sustained.

[Cited in Hollyday v. The David Reeves, Case No. 6,625; Holmes v. Oregon & C. Ry. Co., 5 Fed. 79; The Garland, Id. 924; The E. B. Ward, 17 Fed. 458; The Harrisburg, 119 U. S. 208, 7 Sup. Ct. 143.]

[See Armstrong v. Beadle, Case No. 541, note.]

In admiralty. This was an action in rem by the widow of Edwin Rusk against the steamboat Charles Morgan, to recover damages for the death of her husband. The libel alleged that her husband was a passenger upon said boat from New Orleans to Cincinnati, and that owing to the negligence and carelessness of the master and officers of the boat, in leaving the hatchway open at night, without light and guard, he fell through one of the hatchways into the hold of the vessel and was instantly killed. Prayer for damages. Claimant files a plea to the jurisdiction in the form of exceptions to the libel, on the ground, that in admiralty, as at common law, no action is maintainable for the wrongful death of another, either in personam or in rem.

P. J. Donham, for exception.
Henry Hooper, for libellant.

SWING, District Judge. From an examination of the English authorities, it is very clear, that no right of action existed at common law for the death of a human being. This doctrine is first announced in the case of Higgins v. Butcher, Yel. 89, which was an action brought by the husband for the death of his wife. Then came the celebrated case of Baker v. Bolton, 1 Camp. 493, which was also an action brought by the husband, to recover damages for the death of his wife. These are all the cases we have been able to find prior to the passage of Lord Campbell's act in 1846. But that this was the recognized doctrine is shown by the preamble of the act, which recites that "whereas no action at law is now maintainable against a person who, by his wrongful act, neglect or default, may have caused the death of another person," etc., and the act then proceeds by its provisions to give such right of action. This is further shown by the case of Glaholm v. Barker, 1 Ch. App. 226, in which Lord Justice Turner said: "Lord Campbell's act first introduced into the law of this country a remedy in case of injuries attended with the loss of life. The law up to the time of the passing of this act stood thus, that in case of death resulting from an injury, the remedy for the injury died with the person." The same doctrine is maintained in Osborn v. Gillett, L. R. 8 Exch. 88, and in Bac. Abr. "Master and Servant," O; Blake v. Midland Ry. Co., 18 Q. B. 93. In fact we have not been able to find a single reported case in which a contrary doctrine has been held. The English courts and law writers may not have founded this doctrine upon such principles, as may now appear sound to us; but, nevertheless, it cannot be disputed that such was the doctrine of the common law.

In the United States this principle is not so well settled, and yet the weight of authority is to the same effect, as will be seen by reference to the following cases: Carey v. Berkshire R. Co. and Skinner v. Housatonic Ry. Corp., 1 Cush. 475; Kearney v. Boston & W. R. Corp., 9 Cush. 109; Hollenbeck v. Berkshire R. Co., Id. 480; Pennsylvania R. Co. v. Henderson, 1 P. F. Smith [51 Pa. St.] 322; Whitford v. Panama R. Co., 23 N. Y. 470; Green v. Hudson River R. Co., 2 Keyes [*41 N. Y.] 294; Connecticut Life Ins. Co. v. New York & N. H. R. Co., 25 Conn. 265; Eden v. Lexington & F. R. Co., 14 B. Mon. 165; Worley v. Cincinnati, H. & D. R. Co., 1 Handy, 481; Hyatt v. Adams, 16 Mich. 180.

On the other hand, there is the case of Ford v. Monroe, 20 Wend. 210, in which, however, this question was not made; but it has since been overruled by the New York courts. See cases cited. The case of James v. Christy, 18 Mo. 162, is usually cited as maintaining the opposite doctrine, but it will be found that the decision of the case turned upon a special statute of Missouri. In Shields v. Yonge, 15 Ga. 349, the question was clearly made and decided, but none of the American cases seem to have been referred to by the learned judge who delivered the opinion of the court. And in Sullivan v. Union Pac. R. Co. [Case No. 13,599], the circuit judge made a vigorous assault upon the common law doctrine and refused to follow it; but this case was taken to the supreme court of the United States, and dismissed for want of jurisdiction, at the October term, 1877. As no opinion was delivered by the court, we are unable to say whether this point was considered. So that there is only the Georgia case, which seems to directly deny the common law doctrine. But that this principle or doctrine, that no such right of action existed, has been generally accepted in the United States, is further shown by the fact that in a large number of the states, such a right of action is expressly given by legislative enactment.

But it is urged on the part of the libellant, that whatever the common law principle may be, that the civil law permitted the action, and that the admiralty courts of the United States are not bound by the decisions of the common law. The decisions of the federal courts are not uniform upon this point, although the majority of them sustain it.

In Plummer v. Webb [Id. 11,234] it would seem that the direct question was not determined, but jurisdiction in admiralty was maintained by the United States district judge. The case was appealed to the circuit court, and after amendment of the libel, the action was dismissed by Justice Story for want of jurisdiction.

In Crapo v. Allen [Id. 3,360] it was held that actions in admiralty, for mere personal

torts, did not survive the death of the person injured. But in Cutting v. Seabury [Id. 3,521] the judge said it was not the settled law, that no action could be maintained for damages occurring upon the death of a human being, and that such right ought to exist; but the precise point was left undecided. It was held in the case of The City of Brussels [Id. 2,745], where a child had died from the negligence of the officers of the vessel, that this action could be maintained in rem, as arising upon the contract of passage. And in The Sea Gull [Id. 12,578] Chief Justice Chase decided that an action in rem could be maintained in admiralty by the husband for the death of his wife; and in The Highland Light [Id. 6,477] he affirmed the same doctrine. In the latter case the widow and son filed their libel in rem to recover damages for the death of the father and husband, and the same judge held, that while the action could not be maintained in rem, the action would lie in personam, and that the admiralty court had jurisdiction. This case seems to have been decided wholly upon the construction of the statute; while the former was based entirely upon the general right to maintain such an action in the admiralty court.

In Coggins v. Mary Helmsley [Case No. 14,109] it was held in an action by the wife of the chief mate of a schooner, which was run down by a steamship, causing the death of the husband, that an action in rem would lie in the admiralty court, to recover damages for his death; following the decision of Chief Justice Chase. I find, upon reference to the records of this court, that at the June term, 1870, the district court dismissed the libel of Thomas v. Sherlock [unreported] which sought to recover damages for the death of the husband of libellant, for want of jurisdiction. The case was appealed to the circuit court, and by consent of both parties the decree of the district court was affirmed. There is nothing in the record, however, to show that this point was raised and decided.

So far as I have been able to ascertain, these are all the cases in which the question at issue has been raised and determined. In Steamboat Co. v. Chase, 16 Wall. [83 U. S.] 522, Justice Clifford discusses the question, and after noticing the cases of Crapo v. Allen [supra] and The Sea Gull [supra], adds: "Difficulties, it must be conceded, will attend the solution of this question, but it is not necessary to decide it in this case."

As the case at bar will probably go to the supreme court of the United States, it will be better for all parties that the appeal should be taken after a trial upon its merits. I shall therefore overrule the exceptions to the jurisdiction of the court.

NOTE [from original report]. See on same subject and on cognate questions, The Ruckers, 4 C. Rob. Adm. 74, and note; De Lovio

v. Boit [Case No. 3,776]; Domat, Civ. Law, 1550; 1 McQueen, 750; The Highland Light [Id. 6,477]; The Sea Gull [Id. 12,578]. In the last named case, the wife brought a libel in rem for damages, alleging that her husband was killed while rowing in Baltimore bay by reason of a collision with the vessel libelled. The court decided that it had jurisdiction, and that she was entitled to recover. See, also, 6 Ben. 317 [The Civilta, Case No. 2,775], and The Towanda [Case No. 14,109]. The case of Thomas v. Sherlock [unreported] was finally settled by paying the libellant an amount agreed upon between the parties, after which the decree as stated in the opinion was affirmed. See The Garland [5 Fed. 924]; Brown, J., (February 21, 1881,) holding the doctrine of the text. See, also, the opinion of Deady, J., sitting in admiralty for the district of Oregon, in Holmes v. Oregon & C. R. Co. (1880) 5 Fed. 75. The libel was for damages, alleging that Perkins, the intestate, was killed through the negligent conduct of defendant, while he was being transported across the Willamette river to Portland. The opinion is in accord with those of the other judges referred to herein. See, also, Gerrity v. The Kate Cann, 2 Fed. 241.