Caldwell, J., (Orally.)
Charles Orvis was killed by being run over by the cars of the plaintiff in error, at the point where the railroad crosses a street in Elyria. A. B. Orvis was appointed administrator, and brings this action, in which he avers that this accident was caused by the carelessness and negligence of the railroad and its employes, in that there was not sufficient protection given this child at this crossing; in that there was no proper service at that time by way of giving him notice of danger by means of a flagman at that place; and in the next place there was no person on top of the car that did the killing to give any notice to a person on the track. The decedent was a child almust eight years old. The circumstances were these. I might say, before stating the circumstances, that the railroad company makes few admissions, but denies, principally, all the allegations of the petition, especially the charge of negligence I have spoken of. It seems that at this point, where this accident occurred, there are three tracks of the railroad company; two of them, the two soulh tracks, are used for cars to pass upon, the other one leads to the freight house, and over which trains are not usually run, but ears are passed over there at different times and in different occasions, as it may be necessary to unload there, or for other purposes. On this occasion an engine having some cars attached to it passed in upon this track and switched a little east of this crossing and a little west of the freight house of the plaintiff in error, and there were cars standing on the track,and as the engine and the cars approached these cars, they shoved them along ahead of them, and these cars being thus shoved passed over this highway, and this child was upon the track upon which these cars were being pushed, and he was hit by the car and thrown down and killed. It *712 is claimed as an act of negligence, that he got no notice in fact from the flagman, who, it appears, was there at his place, and that no one was on top of these cars that were advancing, or upon the froat car as they were shoved along to give any notice or any warning of danger. The matter that made the flagman, as was claimed, of no account in this case, was the fact that he was on the south side of the tracks, and, at the time this accident occurred on the north main track, there was passing towards the east and from the west, a long train of freight cars, and they entirely ■obscured, or nearly so, the view of the flagman from any ■one approaching this crossing from the north, and that being the case, the flagman, so far as giving any warning to this child, was of no consequence whatever, and it is alleged to be a ground of’ neglect and careless management of the passing of these trains over that crossing; that being so, it became necessary, if cars were being passed west at the same time this other train was passing east, that greater caution should be observed in the management of the train that was passing to the west. There being no one on the car, the front car of that train, the accident was caused by the negligence of the company. It is said, on behalf of the railroad company, that this child was guilty of contributory negligence, and that his death was caused, at least in part, by his own negligence, and that being the case, there can be no recovery here. The case was tried, and comes to us on ■error with a bill of exceptions, setting out all the testimony. It is claimed, in the first place, that the conclusion of the jury was not correct, both as to finding negligence against the Lake Shore and Michigan Southern Railway Company, and also in finding that this child was not guilty of negligence that contributed to his own injury.
We have examined the question so far as this testimony is concerned, somewhat in detail, and while the testimony is conflicting as to whether there was any one upon the car, where it is claimed a man should have been — upon this car that was passing to the west, and while it is conflicting as to whether the person who got on that car, or got on the cars, whether that car or some other, is also in conflict, and whether he got on the car in time to see this child before he was killed, if he had looked, is somewhat in dispute, and as to whether, when he got on the car, he looked in that direction where the child was, is in conflict also. These matters being somewhat controverted in the testimony, we are unable to say that there was any error on the part of the *713 jury in finding that the railroad company was guilty of negligence.
As to the child, it is claimed that he was given some money by his mother (he lived north of the crossing, or he was staying north of this crossing with a sister of hers), and that he started over to town on an errand, or for some purpose; and when he approached this crossing this freight train going to the east was passing over the crossing, or about to pass, and no one knows exactly when he approached that crossing. It does not appear from the testimony. The first thing that is seen of this child by any one he was upon the north track at that crossing, and perhaps a little west of the sidewalk — a foot or so off the street — a little west of the west line of the street as it crosses the railroad track at that point. He seemed to be bending over with his face to the west and his back to the cars that were approaching him. At that moment he did not seem to be looking in the direction of the cars that killed him. He was picking up pebbles, according to some of the testimony. And there is some testimony to show that he was throwing the pebbles under the train that was passing.
It is claimed that the testimony shows that he was not looking in the direction from which the car came that caused his death. That being so, and having been seen there for some seconds before he was killed, by the flagman who undertook to warn him of his danger, it is claimed that he was guilty of contributory negligence, and that the jury, in finding that there was no contributory negligence, as they must have found under the charge of the court, in order to find the verdict against the railroad company, were clearly wrong, and that the finding was not warranted by the evidence. Now, it is true that all the testimony that locates this child locates him upon the track, perhaps between the rails and a little west of the street line, and with his back towards the cars that were approaching him; picking up pebbles, or at least bending over with his face to the west, and with his back towards these cars. And the question was at once raised whether he was exercising that caution that a child of his years should have exercised, or would ordinarily have exercised. The matter was left to the jury, and the jury have found that there was no contributory negligence, and we do not feel warranted, under the law, as it pertains to a child bf these years, in finding there was any contributory negligence. The fact is, the child was not seen, until just a moment or so before he was killed, by any *714 one, except the flagman, and the flagman’s view must have been necessarily very indistinct, because of the freight train that was passing to the east. It was passing at the rate of ten, twelve or fourteen miles an hour, according to the testimony, and the flagman got a view of this child only as he got a glimpse of him between the cars, which was a mere glimpse, without any distinct view. No one has been able to say that this child, when he approached this place, looked carefully before going upon the track. It .is not known whether at the time he got there these cars had commenced to move. It is well known that cars are frequently standing upon this track in frontof the freighthouse without moving, and this child was more or less familiar with that fact. What precautions were taken by him are unknown and untestified to in this case. And it would be a little hard to say that a child of these tender years, if, when he approached this crossing, looked and saw no cars moving, that it would necessarily be negligence for a child of these years to pass upon that track; and he got no warning after that that any cars were approaching ovor that track, and taking all these facts together, the situation, circumstances, and when this lad was seen, and for the few moments that he was seen by any one distinctively, we cannot say this jury erred in arriving at the conclusion it did upon that branch of the case. Now, it is claimed there were a number of serious mistakes in the trial of this case, for which it should be reversed. In the first place, it is claimed that the charge is unfair in the manner in which it states the case to the jury; that it was very prejudicial to the plaintiff in error, and for that reason should be reversed. For instance, it is claimed that the court obscured every question affecting the plaintiff’s contributory negligence, and made prominent every question that would make the defendant liable. The great question that the court kept holding prominently before the jury all the way through the charge, it is claimed, was the negligence of the defendant. And in so doing, the court charged that in passing over this street with these cars, the company should exercise great caution. It is claimed that this term “great caution” was an error; that the measure of caution was that of ordinary care; that is, such care as is required under such circumstances, and that for the court to say that great caution should be used at that point was an error. Now, we find, in looking at the charge, that the court had been saying to the jury that the railroad company was bound to exercise ordinary care and prudence in the transacting of *715 its business in passing over this highway, and then went on ■and explained to the jury that ordinary care was measured by the hazard, by the danger that attended the transaction of the business. That ordinary care at one point of their road might be very much less than ordinary care at another. The •court was speaking of this road and the danger there was to persons along the street, and the railroad at the same time passing its cars over the same, and calling the attention of the jury at the time this was being done to the fact that the view of any one approaching from the north could not be aided by the flagman, and there was nothing to warn any ■one of the danger upon the north track. Taking all this into consideration, the court did charge that the railroad company should exercise great caution, and we think that was not out of place any more than if he should have said that they should exercise great care, because there were hazards ■attending the circumstances It- is said that in further misleading the jury he charged in such a way that the charge was misleading and prejudicial to the plaintiff in error. It is said that the court urged this question prominently in the charge, “could that accident have been prevented if a person had stood on the front end of that car to have observed the approach of persons in front of the same?”
Again, the court, in another place, charged the same thing, asking almost precisely the same question, and it is claimed by the court turned the jury’s attention almost entirely to the question, “Could this have happened if anyone had been on the car in the place where some one should have 'been?” In another place it is said, “Did, or did not, a person stand on the front of that car,” and.never once saying to the jury, “did, or did not, this child look to see if a train was approaching? Could this accident have happened had that child looked to the west to see whether danger was approaching him when he was standing upon the railroad track?” In all this the court is directing the jury to the negligence charged and the manner in which they shall weigh the testimony, and determine whether or not there was negligence on the part of the railway company, and while it does not state the same question in regard to the child, yet it is not denied but that the law he gave in regard to the' child, in regard to the responsibility of the child, and whether or not he was negligent, was correctly stated in the charge.
The facts were, no one saw the child when he approached. If the child had stood there looking to the east all the while, *716 undoubtedly he would have seen these cars when they approached him, and no one knows but that this child, when he approached the track, looked to see if the cars were approaching. We cannot see that this court was so unfair in this charge that we should now say after this trial that there was unfairness in the charge, and especially should we not say that the court was so unfair that this verdict should now be reversed. Now, it is complained that the court erred in its requests; that the plaintiff in error made certain requests which should have been given in this case and were not.
On page 257 of the record, this request was asked: “It was the duty of the decedent, when approaching or standing upon the railroad where cars were being run, to look out for the approaching cars, and if you find he failed to do so, without a reasonable excuse therefor, he was guilty of such, negligence as will prevent the plaintiff from recovering in this case.”
Now, here, just what is the duty of the child, is the question. Had it been an adult there would be no question. But it is not known in this case but that the child did look. He was only seen here by any one distinctly for a moment, and for that moment his face was turned to the west. If he had been looking in the other direction just a short time before, and these cars were not then moving, but were standing still where they were, and then had turned his face to the west for a moment only, or for a few moments, it would have been entirely wrong for the court to charge that if he was looking to the westward for those few moments, although he was looking a moment before in the direction of the cars and did not see them, it would be negligence. Under the peculiar facts of this case we think the court would not have been warranted in giving that request, although it was good law when applied to adults.
The next request which was refused was: “If you find that the decedent approached this crossing or stood thereon without looking out for approaching cars, he was prima facie guilty of such negligence as will prevent a recovery by the plaintiff in this case, for injuries occasioned to decedent while so approaching or standing upon said crossing, from the mere carelessness of the employes of the company, and this presumption of negligence can only be rebutted by facts and circumstances showing that is was not reasonably practicable for decedent to make or keep such lookout, or such facts and circumstances as would ordinarily induce persons of common prudence to omit such precaution.”
*717 Now, there is one trouble with all these requests — the}7 none of them take into consideration the age of this child. There are many of them which are good law, if you apply them to an adult. But suppose no one had seen this child there at all, and this request had been asked, the court would certainly have been justified in refusing it, as there were no facts from which the jury could come to the conclusion. Now, if the child was only seen for a moment, it is not known how long he had been there, except that his mother thinks it was a very short time between the time he left the house and the time he was brought back. No observation was had of this child but for an instant before he was killed. I think I am justified in saying but for an instant, and all the rest of the time the child was there no one saiv him. When he approached no one knows; what he did, no one knows; and it is improper to submit the question to the jury to say that after having approached that crossing he stood thereon without looking out for approaching cars, because there is no testimony to determine whether he approached the crossing or not without looking out for the cars. It would be asking the jury to determine a question upon which there was no testimony. Another request was: “It was the duty of the decedent, when approaching or standing upon the crossing, where he was injured, to use ordinary care in the use of his senses to ascertain if there was a train in the vicinity liable to pass over said crossing, and if he neglected to so use his senses, and by reason of such negligence was injured, he -was guilty of such contributory negligence as would prevent a recovery in this case.”
That follows exactly under the same reasons as given in the two last. Another request was: “It was the duty of the decedent, when approaching the crossing, to use ordinary care.” There is no testimony but that he did. There is no testimony, one way or the other, upon the question. That being the case, the court was justified in refusing to submit to the jury the question that was not in the case at all. There was no testimony bearing upon that question from which the jury could determine.
Another request was: “If you find that at the time of the accident the decedent was west of the highway upon the right of way of the railroad company, picking up stones, or using the track as a play ground, and while so engaged he received the injury set forth in the petition from the mere carelessness of the defendant, your verdict should be for the *718 defendant.” This is the same law that was charged in almost the same words, that was charged in the case of Canfield v. The Lake Shore Railway Company, in a case tried in Cuyahoga county. It was reversed by the District Court, and the reversal affirmed by the Supreme Court, and the law was laid down in that case by the Supreme Court that that was not the law. It is not the law that if a party is a trespasser upon a railroad track at a point where there is no crossing; that is, suppose this child had gone to some place out in the field, instead of the highway, that then he cannot complain if he is injured by the negligence of the company.
It will not appear that the railroad company is bound to take all the precaution that it would take at the street crossing, but it is bound to exercise ordinary care to protect such persons under the circumstances of the place. And when it sees, or might have seen, by the exercise of such care, an individual upon the track, it is then bound to use all the means that it can to prevent any injury to the person upon the track, and if the person is injured by any neglect to use such means, the person injured can recover, if not guilty of contributory negligence.
Another request was: ‘‘If you find that at the time of the accident to the decedent he was upon the defendant’s right of way, outside the limits of the highway, engaged in picking up stones for his amusement, or otherwise using the same as a play ground, without any permission from the defendant company to so occupy the same, he was a trespasser upon the grounds of the company, and if while so engaged he received the injury set forth in the petition from the mere carelessness of the defendant, the plaintiff cannot recover in this case, and your verdict should be for the defendant, ”
It is argued by counsel for plaintiff in error, that the father of the deceased has a right to sue for a.nd recover the value of the services of the child up to the time he would be twenty-one years of age had he lived, if he was killed by the negligence of plaintiff, and hence it is error to allow the plaintiff below to recover for such period; for the father may also sue, and thus the railroad may be compelled to pay twice; that the statute does not undertake to take away the father’s right; hence in a case like this the representative can recover for only the period not covered by the father’s right.
This proposition assumed that the father, at common law, has an action against one causing the death of his son by negligence. This is not the law. The common law' gives no *719 such right of action. Cooley on Torts, 14, 262; 2 Thompson on Negligence, 1272; Sedg. Meas, of Dam., 7th Ed. 588 and note; Sutherland on Damages, 281; Insurance Co. v. Brame, 95 U. S. 757; Dermick v. R. R. Co., 113 U. S. 11; Wyatt v. Williams, 43 N. H. 102; Telfer v. Northern R. R. Co., 30 N. J. L., 109; Whitford v. Panama & C. R. R., 23 N. Y. 478; Cleveland & Co. R. R. v. Bowman, 66 Pa. St. 393; Worley v. Cincinnati & Co. R. R. Co., 1 Handy, 481; Schneider v. Hosier, 21 Ohio St., 98-110.
!>/. There are some decisions to the contrary, but they are against the weight of authority.
. Wc find no error in the record,and we affirm the judgment.